## BRANCH T. MASTERSON v. FRITZ BOKEL.

Decided May 25, 1903.

1.—Boundaries—Agreement Fixing.

Where a disputed boundary line between lands of the plaintiff and defendant was fixed by agreement of the parties and survey thereunder, and later, defendant being dissatisfied with the result of the survey, a modified agreement was drawn up which defendant refused to sign, this left the original agreement in force and effect.

2.—Same—Harmless Error.

Where a survey under the modified agreement gave defendant more land

than did the original agreement, defendant could not complain of a judgment in accordance with plaintiff's prayer fixing the boundaries according to such latter survey.

Appeal from the District Court of Harris. Tried below before Hon. Wm. H. Wilson.

*Masterson & Masterson* and *W. S. Hunt,* for appellant.

*Jas. A. Breeding,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit brought by the appellant against the appellee to establish the boundary line between the H. A. Robinson and John M. Swisher surveys, owned by appellant, and the south half of B. H. Freeling survey, owned by appellee. All of said surveys are situated in Harris County. After the institution of the suit the following agreement in writing was made and executed by the appellant and the appellee, Bokel.

"State of Texas, County of Harris. This agreement, made and entered into by and between Frederick Bokel and Erasmus Bokel, of the county of Harris, Texas, parties of the first part, and Branch T. Masterson, of the county of Galveston, Texas, party of the second part, witnesseth:

"First. It is agreed that the said parties of the first part own in fee simple one-half of the B. H. Freeling 1476-acre survey in Harris County, Texas, said one-half of said land so owned by the parties of the first part being the southeast 738 acres of said survey.

"Second. It is admitted by the parties hereto that the party of the second part is the owner of all that certain tract of land adjoining the B. H. Freeling survey and patented to Charles Kessler, assignee of H. A. Robinson, by patent No. 411, and consisting of 640 acres. It is also admitted that said party of the second part owns 1109 1-9 acres of land patented to him as assignee of John Swisher, by patent No. 206, vol. 8.

"Third. That the said Henry A. Robinson and John M. Swisher surveys lie east of and adjoining the said Benton H. Freeling survey, the east line of said Freeling survey being the same as the west boundary of the said Robinson and Swisher surveys.

"Fourth. That the true position of the said west line of the said Robinson and Swisher surveys and the east boundary line of the said Freeling survey is now uncertain and unfixed, its true and exact position upon the ground being in dispute between the said parties of the first part and the party of the second part. That the parties hereto desire to have said line definitely established and fixed by a survey upon the ground so that hereafter there can be no dispute and no uncertainty as to where said line actually lies.

"Now, therefore, for and in consideration of the premises and in

order that said boundary line may be definitely determined, and the further consideration that the party of the second part shall dismiss at his own cost a certain suit now pending in the District Court of Harris County, Texas, wherein said boundary line is sought to be determined so far as the same may affect the parties of the first part, the parties hereto agree as follows:

"(1)    That W. A. Polk, county surveyor of Harris County, Texas, or any other surveyor to be agreed upon by said parties, shall at as early a date as practicable, run out and establish the 'lines and corners of said Benton H. Freeling survey by beginning the survey on the corners of either the James Hamilton survey No. 96, the Daniel H. Fitch, the James F. Cruger or the John Thompson surveys as staked upon the ground, and running the course and distances called for in the field notes of said Freeling survey so as to include 1476 acres of land in said survey; the said party of the second part hereby guaranteeing that the southeast one-half of the said Freeling survey shall contain 738 acres of land, and that said survey shall retain as nearly as possible the same general shape, as now claimed for it by the said parties of the first part.

"(2)    That the expenses for surveying out said land and establishing and fixing the lines and corners of said survey shall be borne by the said party of the second part, with the exception of the corner posts, which the said parties of the first part agree to furnish.

(Signed)        "FREDERICK BOKEL,

"E. BOKEL,

"Parties of the First Part,

"BRANCH T. MASTERSON,

"Party of the Second Part."

In pursuance of this agreement the appellant procured a survey of the Freeling grant to be made by W. A. Polk, county surveyor of Harris County, the field notes of said survey made and certified to by said Polk being as follows:

"State of Texas, County of Harris.   Know all men by these presents, that I, W. A. Polk, county surveyor of Harris County, Texas, in pursuance of a certain agreement for survey made and entered into by and between the plaintiff, Branch T. Masterson, and the defendants Frederick Bokel and Erasmus Bokel, parties to a certain suit now pending in the District Court in and for Harris County, Texas, being numbered upon said docket 18,684, surveyed the H. B. Freeling survey upon the ground and find that the boundaries of the said Freeling survey, under the terms of said agreement, are as follows, to wit:

"Beginning at the northeast corner of the Jacob Walters survey on the south line of the Pleasant W. Rose survey; thence south 1000 varas to the southeast corner of the said Walters survey on the north line of the James Hamilton survey No. 96; thence east with the north line of said two Hamilton surveys 2100 varas to the northeast corner of the

James Hamilton survey No. 96; thence south 1900 varas with the east line of said Hamilton survey to its southeast corner, which is also the northwest corner of the James Cruger survey; thence east 1900 varas with the north line of the Cruger, Fitch and John Thompson surveys to the northeast corner of the said Thompson survey; thence south with east line of said Thompson survey 632 varas, the distance called for in the field notes of the said Freeling survey, to a point on the east line of the Thompson for a corner of said Freeling. Thence east 402 varas, the distance called for in said Freeling patent, to a point in the prairie where I established the southeast corner of said Freeling survey on the west line of the Henry A. Robinson survey in accordance with its field note calls and the agreement of parties. Thence north on the division line between the said Freeling survey and the Henry A. Robinson and John Swisher surveys 2343 varas to the south line of the Enoch Harris survey, where I established the northeast corner of said Freeling survey, it also being a corner of the John Swisher survey. Thence north 70 west 720 varas to the corner of the said Enoch Harris survey. Thence north 20 east 930 varas to the southeast corner of the Louis Gladich survey. Thence north 70 west 1727 varas to the southwest corner of said Gladich survey. Thence south 552 varas to the southeast corner of the Pleasant W. Rose survey. Thence west 2350 varas to the beginning, and containing 738 acres south of McIver's pasture place.

"This survey was made on the 5th to 8th days of May, A. D. 1896, in accordance with the agreement of parties, which said agreement is hereto attached and made a part of this report of survey. Witness my hand at the city of Houston, this 31st day of December, A. D. 1896.

(Signed)          "W. A. POLK,
"County Surveyor, Harris County, Texas."

The north half of the Freeling survey is owned or claimed by J. W. McIver, and in making the survey of the Freeling, under the agreement above set out, it developed that if the south line of the north half of said survey was located as claimed by McIver, the defendant Bokel would not have 738 acres, the quantity of land claimed by him in said survey, south of said line and west of the east line of said survey as fixed by Polk. For this reason the appellee was not at all satisfied with the survey as made by Polk. To meet the objection of appellee to the Polk survey appellant proposed the following supplement or modification of the original agreement:

"State of Texas, County of Harris. This agreement, made and entered into by and between Branch T. Masterson and Fritz Bokel and E. Bokel, witnesseth:

"That in settlement of the case of Branch T. Masterson v. Bokel et al., No. 18,684, pending in the District Court of Harris County, the dividing line between the Henry A. Robinson survey, owned by Masterson, and the lower part of the Freeling survey, owned by Bokel, shall be run

on the ground so as to give Bokel south of the McIver's pasture fence and west of the Robinson 738 acres, no more and no less. The surveyor shall fix a post in the ground at a point far enough east of the Thompson survey for the southeast corner of the Freeling, to run a line north with the Robinson west line as fixed by the corner post to be put in, so as to give Bokel 738 acres. The surveyors are directed to run the Freeling from the wagon axle at the corner of the Freeling in the east line of the John Thompson survey, far enough east to fix the southeast corner post of the Freeling so as to include the 738 acres in Bokel's tract.

"The field notes when thus made shall be made the judgment of the court in the above case."

This proposed agreement was reduced to writing but was never signed by the parties. The undisputed evidence, however, shows that shortly after the agreement was proposed the surveyors named therein, together with the defendant and his attorney, went upon the ground and began a survey of said line as provided for in said agreement. In making this survey, S. Griffin, who owned a tract of 160 acres of land south of the Freeling survey, claimed that the south line of said survey as run by Polk and Gillespie conflicted with the lines of his survey and forbade said surveyors running said south line as located by them. When this interruption of the work occurred appellee informed the surveyors that he would have nothing more to do with making the survey, and would not agree to the line as fixed by them. The surveyors went on with the work and established the east line of the Freeling survey as directed in said agreement. The line thus established is shown by the following field notes made and certified to by said surveyor:

"State of Texas, County of Harris. Field notes of a survey of 738 acres made for E. Bokel and B. T. Masterson: Situated in Harris County, on the waters of Brays Bayou, a tributary of Buffalo Bayou, about six miles south from the county seat of Harris County, and being out of the Benton H. Freeling. Beginning at an iron axle in the E. line of the Thompson sur., same being the S. W. cor. of the B. H. Freeling. Th. E. 1780 ft. to a stake. Th. N. 5867½ ft. to a stake on the south line of McIver land; Th. W. along McIver's S. B. line 7060 ft. to a stake and mound in the E. B. line of the Hamilton survey. Th. south along Hamilton E. B. line 4112 ft. to an iron rod, being the N. W. cor. of the Fitch sur. Th. east along the north lines of the Fitch, Cruger and Thompson surveys 5280 to the N. E. cor. of the Thompson sur., a stone for corner; Th. south 1755½ ft. to the place of beginning.

"Bearings marked ——. Surveyed Mch. 30th and Apl. 1, 1898. R. Poole, J. H. McRady, chain carriers. Louis Gillespie, flagman.

"I, W. A. Polk, county surveyor Harris County, and J. J. Gillespie, surveyor, do hereby certify that the foregoing survey was made actually
32 Civil—33.

on the ground, according to law, and that the limits, boundaries and corners with marks, natural and artificial, are truly described in the foregoing plat and field notes.

(Signed) "J. J. GILLESPIE,
"W. A. POLK,
"County Surveyor, Harris County.

"I, W. A. Polk, county surveyor Harris County, do hereby certify that I have examined the foregoing field notes, and find them correct, and that they are recorded in my office, in private sur. book No. 4, page 162.

(Signed) "W. A. POLK,
"County Surveyor, Harris County."

The expenses of making both these surveys were paid by the appellant. Appellee refused to recognize the agreements as binding, and appellant, by amended petition filed in the court below, set up the agreements, and asked that the boundary line between his land and that of appellee be fixed and established as the same was located by Polk and Gillespie as shown by the field notes of the survey made by them in accordance with the agreements above set out.

The execution of the first agreement is admitted by appellee in his answer, and it is not assailed on the ground of mistake or fraud, but he claims that no survey of the land was made thereunder, and that it was abandoned by both parties. As to the second agreement the answer avers that it was never made by the appellee; that he refused to sign same when it was presented to him by appellant's attorney, but agreed that a survey of his land might be made by Polk and Gillespie, and if he was satisfied with the line as fixed by said survey, he would accept the same as the boundary line between his land and the lands of appellant. He further avers that he never accepted or acquiesced in the line as fixed by said surveyors under the directions contained in said unsigned agreement.

There is not a particle of evidence to sustain appellee's contention that appellant abandoned the first agreement or surrendered his right to enforce specific performance of same, except in so far as said agreement was modified by the unsigned agreement which appellee contends was never made by him, nor is there any evidence to contradict the testimony of Polk and other witnesses for the appellant showing that a survey of the land was actually made by Polk under said first agreement, and the line in question fixed as indicated in the field notes of said survey certified to by Polk as before set out. It certainly can not be held that the offer by appellant to modify the original agreement in the interest and for the benefit of the appellee, such offer not having been accepted by appellee, could defeat or in any way impair appellant's rights under said original agreement.

Upon a former appeal of this case this court held that the agreements in question were, in the absence of allegations and proof of fraud or

mistake, valid and binding, and entitled appellant to a judgment fixing his boundary line in accordance with the survey made thereunder. We adhere to our former opinion, and do not deem it necessary to add anything to what is there said in reference to appellant's right to enforce said agreement. 20 Texas Civ. App., 416, 51 S. W. Rep., 39.

If appellee did not, as he testifies, make the second agreement, and the jury have so found, then the original agreement remains in full force and effect, and appellant would be entitled to a judgment fixing his boundary line in accordance with said agreement. He only asks, however, to have the line fixed as designated in the field notes of the survey made by Polk and Gillespie, and since the establishing of said line at the place designated in said field notes deprives him of land to which he is entitled and adds to the quantity to which appellee is entitled under the original agreement, the latter can not be heard to complain at the boundary thus established.

The judgment of the court below will be reversed and judgment here rendered in favor of appellant establishing the boundary line between his land and the land of appellee as the same is fixed and designated in the field notes of the survey made by Polk and Gillespie hereinbefore set out.

*Reversed and rendered.*